JOHN R. BROWN, Senior Circuit Judge.
 

 Johnny Elias-Rivera (Elias) is an attorney who was charged with embezzlement of funds from two bankrupt estates in which he was appointed as trustee.
 
 [1]
 
 He was convicted on two embezzlement counts, one for each estate. He challenges his embezzlement convictions on the grounds of insufficient evidence. We agree that the evidence was insufficient to establish the essential elements of the embezzlement counts and that no rational juror could have found the requisite elements of the crime beyond a reasonable doubt.
 
 [2]
 
 Consequently, we reverse.
 

 Elias was appointed to the panel of trustees of the United States Bankruptcy Court for the District of Puerto Rico. He served the Bankruptcy Court in this fashion for approximately ten years, acting as trustee in over 700 bankruptcy cases. The charges in this case arose out of Elias’ actions as trustee in two specific cases: (i) the estate of Krimilda Ramirez and (ii) the estate of Mr. and Mrs. Raul Fernandez.
 

 In each of these cases, Elias petitioned the bankruptcy court to appoint either himself or his law firm as attorney for the trustee. These requests were granted.
 
 [3]
 
 During the administration of the estates, Elias petitioned the bankruptcy court for payment of attorney’s fees in each case.
 
 [4]
 
 Each request was granted and Elias issued a check to himself for the amount fixed by the bankruptcy court.
 

 Some months later, as these two cases were in their closing stages, the Closing Clerk, as she is designated, prepared Orders of Final Distribution in each case. These were signed by the Bankruptcy Judge.
 
 [5]
 
 Each order authorized payment of an attorney’s fee in the amount previously awarded and paid. Elias prepared checks in each case, made payable to himself or his law firm, and deposited the funds into his personal account.
 

 Business as Usual
 

 A standardized procedure is followed by the bankruptcy court in closing a case. A single individual is employed in the position of Closing Deputy Clerk. The Closing Clerk is responsible for verifying the final reports and accounts filed by trustees in closing a Chapter 7 case. As trustee, Elias
 
 *18
 
 was responsible for filing with the court a Trustee’s Final Report and Account. This report is a summary of actions taken by the trustee in the administration of the estates, including itemized accounts of monies received, disbursed and available for distribution to creditors. The report is to include exhibits detailing these figures along with bank statements and cancelled checks for disbursements made during the administration of an estate. The Closing Clerk then prepares an Order of Final Distribution based on information furnished in the trustee’s final report and account.
 

 Confusion as Usual
 

 At the time the incidents giving rise to Elias’ indictment took place, the Bankruptcy Court in Puerto Rico was in somewhat of a muddle. It was common practice for a trustee handling several estates to maintain a single general account into which all estate funds were deposited and from which all disbursements were issued. It was not uncommon for the trustee to maintain personal funds in this same general account. These funds were all commingled; only the accounting system, maintained by the trustee, provided information as to which, and how many of, the funds belonged to each estate.
 

 In March 1986, a number of bankruptcy trustees formed the Bankruptcy Trustees Association and Elias was elected president. The association was founded to address problems in the management of bankruptcy cases and in communication between the Bankruptcy Court, the Estate Administrator, who acted as liaison between the court and the trustees, and the trustees. Partially as a result of the activities of this group, major changes were effected in the management of bankruptcy cases in Puerto Rico. Perhaps most significant with respect to this case, the practice of commingling funds in one general trustee’s account was abandoned in favor of independent accounts for each bankrupt estate.
 

 In April 1986, Elias, unhappy with the general state of mismanagement surrounding the bankruptcy court, determined to resign as a trustee. To this end, he informed the bankruptcy court of his intention to hire a CPA to perform an audit of his general account, segregating all funds into the appropriate estates and reconciling any discrepancies in order to enable Elias to tie up all loose ends prior to his resignation.
 
 [6]
 
 This audit began in April 1986
 
 [7]
 
 and was continuing at the time the alleged discrepancy arose.
 

 Unmistakably a Mess
 

 When Elias initially filed the Trustee’s Final Report and Accounting, he did not attach to the final report either the bank statements or the cancelled checks because they were not yet available. When the cancelled checks arrived, the Closing Clerk noted that in both cases, two checks had been issued with the notation “attorney’s fees” in the lower left hand comer.
 

 The Clerk made several attempts with Elias, both oral and written, to clarify these disbursements. However, as the account was at that time undergoing an audit, Elias proposed to wait until the audit was completed to make explanation or resolve the problem. Before this was done, a grand jury indictment was returned, charging Elias with two violations of 18 U.S.C. § 153,
 
 [8]
 
 embezzlement of property belonging to the estate of a bankrupt. The charge was that he had taken a double-dip of attorney’s fees from each of the two estates.
 

 Confusion
 
 — Beyond
 
 a Reasonable Doubt
 

 In order to obtain an embezzlement conviction, the government must prove all
 
 *19
 
 three elements of the offense beyond a reasonable doubt, (i) Property of the bankrupt must be embezzled; (ii) it must be property belonging to the bankrupt estate; and (iii) the embezzlement must be done knowingly. It is clear on this record that the government failed to prove that Elias knowingly embezzled property of the bankruptcy estate from either of these two accounts.
 

 It is inconceivable to us how any jury, on the record presented, could have found the elements required by the statute. The prosecution failed to prove that any funds were even misappropriated.
 

 It is clear from the record that everyone, from the Closing Clerk to the trial judge to the jury, was confused by the garbled accounting procedures utilized in the bankruptcy court at the time the alleged double payments were made. Widespread confusion will not support a conviction where there is uncontroverted testimony that no property of the respective bankrupt estates was ever misappropriated.
 

 Elias, as was the customary practice in this bankruptcy court, maintained a single account in which he kept funds belonging to all of the bankrupt estates he was administering. Elias kept personal funds, money belonging to him alone, in this account as well. There was testimony, undisputed in the record, to the effect that over $15,000 in this account belonged to Elias personally.
 
 [9]
 

 The two estates involved here were unusual Chapter 7 cases. Each was initially thought to be a “no asset” case, but as a result of Elias’ diligence, assets of both debtors were discovered, enabling all creditors to be paid in full with a small residual being returned to the debtor.
 

 The Closing Clerk, a C.P.A. hired by Elias, and Elias himself testified without contradiction that, although two checks in each case were written with the notation “attorney’s fees” in the left hand corner, only one check — the initial one — was charged against the estate. In neither case was the second check actually charged against the debtor’s estate. The debtors did not lose one single penny of funds to which they were entitled. All witnesses were in agreement that, assuming only one payment of fees, each debtor was entitled to a refund of a small sum of money after all creditors were paid ($149.09 in one; $266.65 in the other).
 
 [10]
 
 Had a second fee actually been subtracted from each estate, the debtor would have received nothing and the estate at closing would have had a negative balance. This was not the case.
 

 There is an established presumption that withdrawals for other than trust purposes from an account in which trust funds are commingled with nontrust funds are presumed to be made from nontrust funds.
 
 [11]
 
 There is a total lack of evidence in the record to rebut this presumption. The prosecution failed to prove that funds were even missing, much less missing from funds belonging to the debtors. In order to support a conviction for embezzlement it is essential to prove that funds belonging to the debtor were actually taken. Without proof that funds belonging to the bankrupt estates of (i) Krimilda Ramirez and (ii) Mr. and Mrs. Raul Fernandez were missing, Elias’ conviction for embezzlement of those funds cannot stand.
 

 It is apparent that a mistake was made. Elias, in his role as trustee, wrote two checks in each case which were marked “attorney’s fees” in each case. Those checks were cashed and appeared in an exhibit to the trustee’s Final Report. However, in the Final Accounting submitted by Elias, each estate was only charged
 
 once
 
 for attorney’s fees. While the funds in question were disbursed, it is clear they were not paid from the estates of either of
 
 *20
 
 these two debtors. The confusion arose because all funds, personal and trust, were kept in a single commingled account.
 

 The simplest explanation for this problem seemed to evade everyone. Not only is it absurd to think a qualified, experienced attorney would ruin his reputation and destroy his career for $1,200, it is beyond belief that a simple accounting error subjected a respected attorney to imprisonment and worse, disbarment. It is clear to this Court, as it should have been to the Estate Administrator who initiated grand jury proceedings, and the prosecutor who tried this case, that this case should never have been brought or tried. Elias’ requested instructed verdict at the close of the government’s case should have been granted.
 

 We reverse Elias’ conviction with directions to dismiss the indictment.
 
 [12]
 

 REVERSED AND REMANDED.
 

 [1]
 

 . He was also charged with, but acquitted of, use of the United States mails in furtherance of this scheme to defraud the bankrupt estates.
 

 [2]
 

 .
 
 Jackson v. Virginia,
 
 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979);
 
 United States v. Hensel,
 
 699 F.2d 18 (1st Cir.1983).
 

 [3]
 

 . The bankruptcy judge granted the motion in the Ramirez case on June 16, 1983. The Fernandez motion was granted on November 16, 1981.
 

 [4]
 

 . The Ramirez petition was filed November 9, 1984; the Fernandez petition was filed March 29, 1984.
 

 [5]
 

 . The Ramirez Final Order was entered June 25, 1985; the Fernandez Order on March 5, 1985.
 

 [6]
 

 . Defendant’s Exhibit V (Elias' notification of resignation).
 

 [7]
 

 . TR Vol. IV, pp. 314, 321.
 

 [8]
 

 . 18 U.S.C. § 153 provides:
 

 Whoever knowingly and fraudulently appropriates to his own use, embezzles, spends, or transfers any property or secretes or destroys any document belonging to the estate of a debtor which came into his charge as trustee, custodian, marshal, or other officer of the court, shall be fined not more than $5,000 or imprisoned not more than five years, or both.
 

 [9]
 

 . TR Vol. in, p. 247; TR Vol. IV, p. 376.
 

 [10]
 

 . TR Vol. II, pp. 103, 107; Vol. Ill, p. 250; Vol. IV, pp. 374, 377.
 

 [11]
 

 .
 
 See Central Natl Bank of Baltimore v. Connecticut Mutual Life Ins. Co.,
 
 104 (14 Otto) U.S. 54, 26 L.Ed. 693 (1881);
 
 Liberty Nat'l. Life Ins. v. United States,
 
 463 F.2d 1027 (5th Cir.1972);
 
 In re Property Leasing & Management, Inc.,
 
 46 B.R. 903 (Bkrtcy.E.D.Tenn.1985);
 
 see also Bethlehem Steel Corp. v. Tidwell,
 
 66 B.R. 932 (M.D.Ga.1986);
 
 In re Mahan & Rowsey,
 
 35 B.R. 898 (Bkrtcy.W.D.Okla.1983); 76 AM.JUR.
 
 Trusts
 
 § 263 (1975).
 

 [12]
 

 .
 
 Tibbs v. Florida,
 
 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), holds that jeopardy does attach in situations of this type. It is our understanding that Mr. Elias was compelled to pay $1,200 as part of his sentence. We would suppose that this and all parts of the sentence are now vacated. But this is remanded to the District Court for such further orders as are appropriate and consistent with this opinion.